THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* MINNIE E. TATGE, Exrx., Appellee.

*Opinion filed April 22, 1915.*

1. INHERITANCE TAX—*it is only excess over indebtedness and expenses of administration which is subject to tax.* The property of a decedent passes, by the intestate laws of this State, subject to his indebtedness and the expenses of administration, and it is only the excess over such indebtedness and expenses which is subject to an inheritance tax.

2. SAME—*fact that claim was not presented and allowed in the probate court is not material.* If an estate is actually indebted to a person and the beneficiaries in good faith compromise the claim and pay it or become liable therefor, the estate to which the beneficiaries succeed is decreased by such amount, and it should be deducted in computing the inheritance tax, if nothing appears to impugn the good faith of the settlement. (*In re Graves,* 242 Ill. 212, distinguished.)

3. SAME—*legislature had the right to fix rate of taxation upon succession to property.* The legislature had the right to fix the rate of taxation upon the succession to property, and in the exercise of such right it has fixed certain exemptions and certain rates, the

exemptions being less and the rate more as the degree of kinship becomes more remote.

4. SAME—*exemption created by proviso to section 1 of the Inheritance Tax act does not apply to step-children.* The language of the proviso to section 1 of the Inheritance Tax act which extends the exemption of a child to a child to whom the deceased stood in the acknowledged relation of parent if the relationship began before the child's fifteenth birthday and continued for ten years thereafter, provided "that the parents of such person so standing in such relation shall be deceased when such relationship commenced," refers to the death of the parents of the child and thereby excludes step-children.

5. SAME—*exclusion of step-children from exemption is not an unlawful discrimination.* The provisions of section 1 of the Inheritance Tax act extending the exemption of a child to adopted children, and, under certain circumstances, to children to whom the deceased stood in the acknowledged relation of parent, are not unconstitutional as creating a discrimination against step-children, as the latter have no legal rights in the property or home of the step-parent and the legislature is not bound to recognize such relation.

APPEAL from the County Court of Cook county; the Hon. JOHN. E. OWENS, Judge, presiding.

P. J. LUCEY, Attorney General, and THOMAS J. YOUNG, (JOHN J. POULTON, of counsel,) for the People.

OSCAR M. WOLFF, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Two questions are presented by this record in regard to the inheritance tax upon the estate of Theodor Dackerman: First, whether the court erred in allowing a deduction from the value of the estate of $8703.60 on account of a claim against the estate; second, whether Minnie E. Tatge was entitled to any exemption upon the gift to her.

Theodor Dackerman and his son, William, were partners in the real estate business. The son died before the father, and upon the death of the latter the son's widow, Martha Dackerman, claimed that upon an accounting of the partnership business she would be entitled to $12,000. No

claim was filed in the probate court, but the beneficiaries of the estate, in settlement with Mrs. Dackerman, agreed to pay her the income of $12,000 at five per cent during her life. The court ascertained the present value of the payments to be $8703.60 and deducted that sum from the value of the estate. It is insisted on behalf of the People that the county court ought not to have allowed the deduction, because the claim was allowed as the result of a compromise after the decedent's death and there was no proof of a valid existing indebtedness against the estate. If the estate of Theodor Dackerman was actually indebted to Martha Dackerman there is no doubt that the amount should be deducted before the inheritance tax is assessed, for the property of a decedent passes, by the intestate laws of the State or by his will, subject to his indebtedness and the expenses of administration, and it is only the excess over such indebtedness and expenses which is subject to the tax. It is not material that the claim was not presented to and allowed by the probate court. If the claim was an actual indebtedness of the estate and the beneficiaries of the estate actually paid it, then the amount of the estate to which the beneficiaries actually succeeded was reduced the amount paid. The case of *In re Graves,* 242 Ill. 212, is not opposed to this. The amount which it was there held could not be deducted was not an indebtedness of the estate. There was no claim against the estate and no question which affected the indebtedness of the estate or the amount to pass to the heirs or devisees. The question was only one of distribution among heirs and devisees. A disinherited heir claimed that the will was invalid and that she should succeed to a part of the estate under the intestate laws, and the money paid to her was paid by those who succeeded to the whole of the estate, to prevent her contesting the will. The amount of the estate which passed to the devisees by the will was not diminished by such payment. No proof was made that the estate of Theodor Dackerman

was indebted to Martha Dackerman. She claimed a much larger amount than was allowed and the persons beneficially interested in the estate settled with her for the smaller amount. There was no evidence on either side as to the good faith of the transaction. In such a case the question ought to be open to investigation whether the transaction is used as a device for defeating, in part, the inheritance tax, but where nothing appears to impugn the good faith of the settlement, a compromise by the parties actually interested should be regarded as evidence of the validity of the debt. The burden of showing the contrary rests upon the People.

Minnie E. Tatge is the residuary devisee of one-half the estate. The tax assessed against her was at the rate of five per cent and she was allowed no exemption. She claims she should have been assessed only one per cent upon the excess over an exemption of $20,000. She was the daughter of John Luppa, who died when she was about ten months old. Her mother afterward married Theodor Dackerman. The child took the name of Dackerman and lived in his family for sixteen years, until she was married, and was supported and educated by him. Her mother died in 1901.

The first section of the Inheritance Tax act provides that "when the beneficial interests to any property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of the daughter, or any child or children adopted as such in conformity with the laws of the State of Illinois, or to any person to whom the deceased, for not less than ten years prior to death, stood in the acknowledged relation of a parent: *Provided, however,* such relationship began at or before said person's fifteenth birthday and was continuous for said ten years thereafter: *And, provided, also,* that the parents of such person so standing in such relation shall be deceased when

such relationship commenced, or to any lineal descendant of such decedent born in lawful wedlock," the tax shall be one dollar on the hundred upon the excess over $20,000 received by each person.

It is argued, first, that the expression, "parents of such person so standing in such relation shall be deceased when such relationship commenced," refers to parents of the person standing in the relation of parent, and not to parents of the person standing in the relation of child. While the language is somewhat vague and indefinite and a strict application of the rules of grammatical construction might give the language the meaning contended for, a consideration of the whole clause leaves no doubt that the expression refers to the parents of the person standing in the relation of child. Mrs. Tatge was not related by blood to the decedent. Her claim to the exemption is based upon the facts, as she claims them, that the deceased stood in the acknowledged relation of a parent to her for more than ten years prior to his death and that such relationship began before her fifteenth birthday and was continuous thereafter.

It is contended on behalf of Mrs. Tatge that the further proviso of the statute that her parents should be deceased when such relationship commenced is an arbitrary condition, which imposes inequality of taxation among members of a class, and is therefore unconstitutional, violating section 1 of article 9 of the constitution. Counsel argues that the class referred to is strangers to the blood of the decedent; that the members of this class having the strongest claims on the decedent are step-children, but that they are excluded from the exemption; that such exclusion is arbitrary and unreasonable and therefore unconstitutional. The legislature has the right to fix the rate of taxation upon the succession to property, and in the exercise of the right have fixed certain exemptions and certain rates, the exemptions being less and the rate more as the degree

of kinship becomes more remote. To a stranger or a relative beyond the degrees mentioned in the statute there is no exemption except in the cases mentioned in the provision now under consideration, which extends the exemption to adopted children and children to whom the deceased stood in the acknowledged relation of a parent. It was within the discretion of the legislature to determine to what classes the exemption should extend, provided only that there was a reasonable basis for the classification. The qualifications which must be complied with to entitle the person to whom the decedent stood in the relation of a parent to the exemption are, that the relation must have begun before the beneficiary's fifteenth birthday, have been continuous to the decedent's death, have lasted ten years, and the beneficiary's parents must have been dead when the relation began. It is reasonable to require that the relationship should have begun at a comparatively early age of the child, that it should have been continuous and lasted a sufficiently long time to indicate permanency. We know of no reason why it is unreasonable not to permit such relation to confer any legal right so long as the natural relation of parent and child exists. The children of a man or woman acquire no right in the property or home or family of the woman or man whom the parent may marry. The relation confers no legal rights and imposes no legal duties. The legislature is not bound to recognize it, and an act passed which does not take that relation into consideration is not, therefore, invalid. The proviso in question applies equally to all persons who come within its terms, and the judgment of the county court will be affirmed.

*Judgment affirmed.*