Taft, J.,
dissenting. I agree with the judgment, to the extent that it holds that amounts paid under the “retirement annuity” contracts were not exempt from inheritance taxation as “proceeds of * * * life insurance” within the meaning of Section 5731.06, Revised Code. However, in my opinion, the refusal, in determining the inheritance tax, to permit deduction of any indebtedness of decedent’s estate, in excess of the amount of its probate assets, is erroneous for several reasons.
Taking approximate figures and disregarding $28 of the debts against this estate, it will simplify consideration of this case, without affecting the legal questions involved, to regard *379 it as a case where there are $880 of probate assets, nonprobate assets including $10,000 of joint and survivorship U. S. bonds, $250 expenses of administration, $500 exempt from administration, a $3,000 widow’s allowance, and $1,120 of funeral expenses paid by the widow.
The $500 exempt from administration must first be deducted from the probate assets. Then, under Section 2117.25, Revised Code, the $250 administration expenses should next be deducted therefrom. This leaves only $130 available for funeral expenses and nothing for the $3,000 allowance to the widow.
By what it said, the General Assembly expressed an intention that a widow’s allowance for support (pursuant to Section 2117.20, Revised Code) up to $3,000 should not be subject to any inheritance tax. Section 5731.03, Revised Code.
Previous decisions of this court have indicated that the allowance to a widow for support, now provided for in Section 2117.20, Revised Code, may be satisfied out “of any property which” her husband “owns and of which he retains the right of disposition and control up to the time of his death,” even though such property does not become a part of his estate. Bolles v. Toledo Trust Co., Exr., 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164, and Neville v. Sawicki, Exr., 146 Ohio St., 539, 67 N. E. (2d), 323. Admittedly, the decedent owned the $10,000 of U. S. bonds and retained the right of disposition and control thereof, up to his death.
What reason is there for refusing to permit the widow in the instant case to consider $3,000 of those $10,000 bonds as a satisfaction of her widow’s allowance, an allowance that is admittedly not subject to inheritance tax? If those bonds had been so held in the names of the decedent and someone else, instead of the decedent and his widow, the widow could have had her allowance satisfied out of their amount, with the result that not more than $7,000 of the $10,000 amount thereof would have been subject to an inheritance tax.
In arguing against permitting any deduction on account of funeral expenses, it is contended that the widow was a volunteer in paying those expenses. Perhaps, because it would rarely be contended that a widow does not have a duty to bury her deceased husband where she is financially able to do so and his *380 estate is not, there is little authority in Ohio as to whether she has such a duty. What authority there is is to the effect that she has such a duty. See Farley v. Carson, 8 Dec. Rep., 119, 5 W. L. B., 786; 21 Ohio Jurisprudence 372, Section 45.
Even if it is not a widow’s legal duty to bury her husband where she is financially able to do so and his estate is not, it is certainly the widow’s moral duty to do so; and we should not impute to the General Assembly an intention, in the enactment of the inheritance tax laws, to discourage performance of such a moral duty, unless that intention has been clearly expressed.
In the instant case, both parties recognize that these bonds pass to the widow, not by reason of any inheritance or because they are part of any estate, but because of a contract made by the decedent for the benefit of his widow. In re Estate of Hatch, 154 Ohio St., 149, 93 N. E. (2d), 585. See Bauman v. Walter, 160 Ohio St., 273, 276, 277, 116 N. E. (2d), 435, and cases cited therein. The General Assembly has expressed an intention to tax what a widow gets under such a contract, apparently because it represents something she gets as a gratuity by reason of her husband’s death. In re Suderov’s Estate, 282 N. Y. Supp., 405, 408, affirmed without opinion in 249 App. Div., 763, 292 N. Y. Supp., 468, which was affirmed without opinion in 274 N. Y., 525, 10 N. E. (2d), 531. By reason of that same death, she receives a corresponding legal or at least moral obligation to pay for her husband’s decent burial if, as here, his estate is unable to do so. If the widow performs that obligation imposed upon her by her husband’s death, the cost of its performance necessarily reduces what such widow otherwise receives as a result of his death. To tax what she otherwise receives, without reducing it by the amount she pays for such funeral expenses, is to disregard reality and tax the widow not merely on the net amount that she actually receives by reason of her husband’s death, but upon something more. This appears to be inconsistent with the attitude of this court, in recognizing that there should be inheritance taxation only on what is received after payment of debts, including payment of the federal estate tax, even though the General Assembly did not express any such intention. Tax Commission, ex rel. Brice Atty. Genl., v. Lamprecht, Admr., 107 Ohio St., 535, 140 N. E., *381 333, 31 A. L. R., 985. Thus, after a complaint about the “deficiencies, ambiguities, and uncertainties, and * * * imperfections * * *' and * * * difficulties * * * in * * * administration” of the inheritance tax law, it is stated in part at the end of the opinion in that case at page 550:
“If * * * we assume that the Legislature intended to be just and to tax only the actual amount received by each beneficiary * * * then the conclusion must be reached that the Legislature also intended that every kind of debt, charge, expense, and claim of a valid nature against a decedent’s estate should be deducted, and the succession tax be computed only upon.the net balance.”
Furthermore, as stated in the syllabus in that case, “the Ohio inheritance tax is a succession tax on the beneficial interest of each heir, legatee, devisee, or other beneficiary of a decedent’s estate.”
In People v. Beckers, Admr., 413 Ill., 102, 105, 108 N. E. (2d), 5, it is said in the opinion by Hershey, J.:
“* * * It is the beneficial interest against which the inheritance tax is assessed. In general, the beneficial interest is what remains after the payment of the indebtedness of the estate and the expenses of administration, and it is this excess over debts and expenses of administration which is subject to the tax. * * *
“Clearly, we are not concerned at all with the application of estate assets to the payment of debts. Indebtedness of the estate need not even be paid from estate assets, if actual beneficiaries in good faith compromise the claim or pay it or become liable for it, for such debt to be a valid deduction in computing the inheritance tax. (People v. Tatge, 267 Ill., 634.) There is no authority which implies that the source of payment of a decedent’s debts controls their allowance as deductions.”
In People v. Tatge, supra, it was said by Dunn, J.:
“ * * * it is only the excess over such indebtedness and expenses which is subject to the tax. It is not material that the claim was not presented to and allowed by the Probate Court. If the claim was an actual indebtedness of the estate and the beneficiaries of the estate actually paid it, then the amount of the estate to which the beneficiaries actually succeeded was reduced. [by] the amount paid.”
*382 Besides those inheritance tax cases from Illinois, there are quite a number of other cases which support the taxpayer’s contention, that all debts of the decedent’s estate should be deductible in determining inheritance or estate taxes although the probate assets are not sufficient to discharge such debts; and there is apparently little, if any, authority to the contrary. See annotation, 110 A. L. R., 1255.
It has been suggested that estate tax cases should not be persuasive in determining whether such a contention of the taxpayer should be sustained. An inheritance tax is admittedly levied against the right of persons to receive property from an estate (or on the death of a decedent) and is therefore measured by the value of what is received. On the other hand, an estate tax is levied against the right of a decedent to transfer property and is therefore measured by the value of what is transferred. Tax Commission, ex rel. Price, Atty. Genl., v. Lamprecht, Admr., supra, 538 (107 Ohio St., 535). If debts may be deducted in determining what is received, it is obvious that they should be deducted in determining what is transferred, and vice versa. Generally speaking, what is received will equal, or at least not exceed, what is transferred. If, as in the instant case, there are substantial amounts of nonprobate assets not reachable for payment of debts, a decedent may thereby be enabled to transfer such nonprobate assets, free of debts which probate assets are insufficient to satisfy. However, such a decedent will be unable to so transfer any more of such non-probate assets than those who benefit from his estate (and are subject to inheritance tax) will receive. Hence, cases determining that debts in excess of probate assets may be deducted from nonprobate assets in determining estate taxes even though such nonprobate assets are not liable for their payment, should be persuasive in determining whether such debts may be so deducted in determining inheritance taxes.
In the estate tax ease of In re Suderov’s Estate (N. Y.), supra, after noting that the tax on life insurance proceeds, as does the tax on proceeds received under the contract in the instant case, represents “an arbitrary selection of a subject for taxation,” the opinion states:
“Even as a matter of abstract justice to the state, which *383 is hardly a pertinent consideration in the interpretation of a statute based upon arbitrary fiat and not on legal principles or logical conclusions [a reference to the taxing of nonprobate assets], it is difficult to perceive any cause for its [the state’s] complaint. * * * Under the determination of the appraiser the state receives precisely the same sum which it would receive were all the assets of the ‘gross estate’ liable for the obligations of the decedent. If any one has a right to complain, it is either the creditors, who will not be paid in full or the beneficiaries ® * * whose contract rights have been partially curtailed and invaded in order to supply needed revenue for the government.”
Finally, it may be observed that Section 5731.02, Revised Code, which provides the only statutory basis for any inheritance tax at all with respect to the $10,000 of U. S. bonds involved in the instant case, reads so far as pertinent:
“A tax is hereby levied upon the succession to any property passing, in trust or otherwise, for the use of a person, institution, or corporation, in the following cases:
“(E) Whenever property is held by two or more persons jointly, so that upon the death of one of them the survivor has a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a succession taxable under this section, in the same manner as if the enhanced value of the whole property belonged absolutely to the deceased person, and he had bequeathed the same to the survivor by will Si * * ■>■>
If the decedent had bequeathed these $10,000 of bonds to his widow by will, she would have taken only that portion of that amount not required to pay the debts of the decedent’s estate. Hence, it would appear that the General Assembly by what it said clearly expressed an intention to levy an inheritance tax in a case such as this only on that portion.
Bell and Herbert, JJ., concur in the foregoing dissenting opinion.